Merrimack,
No. 4737.

FREDERICK J. CARTER & a. v. JOHN L. BROWN & a.

Argued September 1, 1959.

Decided November 3, 1959.

272

*L. Wilder Quint* and *George P. Cofran* (*Mr. Quint* orally), for the plaintiffs.

*Sulloway, Hollis, Godfrey, Soden* and *Joseph A. Ransmeier* (*Mr. Ransmeier* orally), for the defendants.

BLANDIN, J. The plaintiffs' position is "that the lump sum settlement of May 6, 1957 was made due to error of law, and that in addition there are equitable grounds which justify its being set aside and a new hearing held on the merits of petitioner's claim for total and permanent disability."

At the outset, the plaintiff is faced with the proposition that a lump sum settlement made without error of law and in accordance with Laws 1947, c. 266, s. 31 (now RSA 281:33) is final unless equitable grounds exist for setting it aside. *King* v. *Kniznick*, 98 N. H. 247, 250. To determine the worth of the plaintiff's claims, it appears necessary to examine the facts in some detail.

At the hearing before the Labor Commissioner, the transcript of which was later submitted to the Superior Court, the plaintiffs

were represented by counsel. No claim was made then that Frederick was mentally incompetent to sign the settlement. His own attorney, supported by his physician, stated that he was fit to do so. His physician further gave his opinion that the plaintiff unquestionably had earning capacity "in the neighborhood" of 40 to 50 per cent of what he possessed before the accident. The petition of May 2, 1958, now before us, is signed by the plaintiff and acknowledged before counsel who now represent him. In the record before us no equitable grounds appear for setting aside the lump sum settlement on the ground of mental incapacity.

In approving this settlement, we do not believe the Labor Commissioner must be held, as is urged, to have erred in his interpretation of the law. The undisputed testimony that the plaintiff, though permanently disabled to a substantial degree, had some earning capacity, which the Commissioner was entitled to believe, created a situation where the amount of compensation could be considered as governed by Laws 1947, c. 266, s. 21 (now RSA 281:23), as amended by Laws 1949, c. 202, s. 2, relating to temporary total disability, and Laws 1947, c. 266, s. 23 (now RSA 281:25), covering temporary partial disability. As we have pointed out in the case of *Bolduc* v. *Company*, 97 N. H. 360, 368, the heading of the latter section "Compensation for Temporary Partial Disability," is misleading, as the language of the section authorizes its application to cases of permanent partial disability also. Under the former section, compensation is limited to 300 weeks, with any period of partial disability deducted. Since the maximum weekly payment applicable in this situation was $30 (Laws 1951, c. 74, s. 3, now RSA 281:30), not over $9,000 could be paid in any event under s. 21. The same is true under Laws 1947, c. 266, s. 23, now RSA 281:25.

Actually the plaintiff received twenty-five weeks' compensation at $30, the maximum, from the time of his injury to October 29, 1952, and for the next 235 weeks until March, 1957, he was paid at his former wage of $65 weekly. Of the 300 weeks allotted for compensation, there remained 40 during which he was entitled to payments. *Davis* v. *Manchester*, 100 N. H. 335. At the maximum for these 40 weeks, his award would be $1,200. He received $2,500 in lump settlement. It thus appears that during the 300 weeks following his injury he received in all $18,525. Had he done no work, he would have collected $9,000 in compensation under *ss.* 21 and 23 during this period.

However, the plaintiff claims he was entitled to compensation under Laws 1947, *c.* 266, *s.* 22 VI (now RSA 281:24 VI) which covers cases of permanent total disability caused by "an injury to the skull resulting in incurable imbecility or insanity." This section provides that compensation should be computed as under *s.* 21. It therefore appears that the plaintiff would have fared no better under *s.* 22, since, as we have pointed out, the limit under *s.* 21 is not "longer than 300 weeks." Furthermore, the evidence did not compel any finding that the plaintiff's injury resulted in "incurable imbecility or insanity."

Section 28, relating to maximum benefits, as amended by Laws 1949, *c.* 202, *s.* 3, and as further amended by Laws 1951, *c.* 74, *s.* 3 (now RSA 281:30), which it is argued is applicable to this case, provided that compensation could not exceed $9,000 "or extend over a period of more than 300 weeks from the date of the injury," except as provided in *ss.* 20, 22, 24 and 27 (now RSA 281:22, 24, 26, 29). An examination of these provisions discloses that in none of them except under *s.* 27 can the award exceed $9,000 or continue "more than 300 weeks." Section 27 applies only in cases of minors injured while employed in violation of law and obviously has no bearing here. It thus appears that even had ·*s.* 22, *supra,* been used as a yardstick to measure the plaintiff's award, the Labor Commissioner was limited, in his consideration of what was a fair settlement, to $9,000 and the 300-week period. The legislative approval of the *Davis* case, 100 N. H. 335, by Laws 1957, *c.* 187, *s.* 14, removes any doubt of this. *Keene* v. *Roxbury,* 96 N. H. 233, 234.

A further contention of the plaintiff is that his earnings during the 235 weeks he worked after the accident are not conclusive of his earning capacity and he should be entitled to a further award for that period. It is true that actual earnings are not the sole test, but rather the loss of earning capacity is the measure by which the amount of the award should be determined. *Desrosiers* v. *Company,* 97 N. H. 525, 531. However, payments made by the employer in certain circumstances may be considered as voluntary payments in lieu of compensation and properly set off against the amount payable. Laws 1947, *c.* 266, *s.* 29 (now RSA 281:31) providing for such action has never been construed. However, under an analogous provision relating to medical payments (Laws 1911, *c.* 163, *s.* 6(2), it was held in *Mulhall* v. *Company,* 80 N. H. 194, that it is a question of fact for the Court to determine to what

extent compensation otherwise payable should be reduced by the value of medical services furnished the plaintiff by the employer's physician. *Id.*, 202-210.

Persuasive authorities agree with this principle and hold that it may be inferred that payment of wages was intended to be in lieu of compensation in cases where the claimant really did not earn what he received. 2 Larson, Workmen's Compensation Law, *s.* 57.40-42. There was ample evidence in this case to support the conclusion that the plaintiff did not earn his pay for the 235 weeks during which he worked after his injury, and that his employer "leaned over backward" to keep him on the job when he was really a liability rather than an asset to the business. The Labor Commissioner was entitled to consider these payments in determining whether he should approve the lump sum settlement. In the light of the circumstances, we cannot say that the amount of the settlement was unfair. At the hearing before the Commissioner, the record indicates that the entire situation was thoroughly canvassed and the plaintiff's position and rights were carefully explored. This is in accordance with the procedure suggested in *King* v. *Kniznick,* 98 N. H. 247, 250. The plaintiff's argument that the Commissioner must be held not to have exercised his discretion in approving the settlement, and that it was inequitable in amount, fails.

In summary, we have a case where no error of law appears and no equitable grounds exist for upsetting the settlement made with advice of counsel and approved by the Commissioner, acting within his reasonable discretion. *King* v. *Kniznick, supra,* 250.

The result reached renders unnecessary consideration of other points raised, and the order is

*Petition dismissed.*

All concurred.